UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SKURKA AEROSPACE, INC., | ) | CASE NO.:  1:08-cv-01565 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| vs. | ) | |
| | ) | |
| EATON AEROSPACE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM IN SUPPORT OF
# EATON AEROSPACE LLC'S MOTION TO
# <u>DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT</u>

James D. Robenalt (#0022165)
Robert F. Ware (#0055515)
Maria A. Citeroni (#0073827)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114
Telephone:  (216) 566-5500
Facsimile:  (216) 566-5800
James.Robenalt@ThompsonHine.com
Robert.Ware@ThompsonHine.com
Maria.Citeroni@ThompsonHine.com
*Attorneys for Defendant*
*Eaton Aerospace LLC*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION AND PROCEDURAL HISTORY ................................................ 1

STATEMENT OF ALLEGATIONS ........................................................................ 2

      A.     The Asset Purchase Agreement's Limitations on Remedies. ..................... 3

      B.     Skurka's Allegations Relating to Delivery of Intellectual Property. ........... 5

      C.     Skurka's Newly Added Allegations. .......................................................... 6

LAW AND ARGUMENT ..................................................................................... 6

   I.    The Legal Standard on a Motion to Dismiss. ......................................... 6

   II.    Skurka's Claim for Breach of the Asset Purchase Agreement (Count III) Should be Dismissed. ................................................................................ 9

      A.     Skurka Has Failed to Assert a Claim for Indemnification as Required by the Asset Purchase Agreement. .............................................. 9

      B.     Skurka's Claim is Barred by the Asset Purchase Agreement's Limitations Period. .................................................................................... 11

   III.   Skurka's Claim for Conversion (Count IV) Should be Dismissed. ..................... 12

   IV.   Skurka's Claim for Misappropriation of Trade Secrets (Count V) Should be Dismissed. ............................................................................................. 14

      A.     Skurka's Allegations Do Not Establish that Eaton's Possession of Intellectual Property is "Improper" as Required by the Uniform Trade Secrets Act. .................................................................................... 14

      B.     Skurka's Misappropriation of Trade Secrets Claim is Barred by the Economic Loss Rule. ................................................................................. 16

   V.    Skurka's Claim for Replevin (Count VI) Should be Dismissed. ......................... 17

   VI.   Skurka's Claim for Accounting (Count VIII) Should be Dismissed. .................... 18

CONCLUSION ..................................................................................................... 20

LOCAL RULE 7.1 CERTIFICATION .................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

Au Rustproofing Center, Inc. v. Gulf Oil Corp., 755 F.2d 1231 (6th Cir. 1985) .........................10

Bell Atlantic Corp. v. Twombly, - - - U.S. - - -,  127 S. Ct. 1955, 167 L. Ed. 2d 929
(2007)..............................................................................................................................8

Chevron Prods. Co. v. Cascade Dist., Inc., No. 5:05-CV-2007, 2006 WL 1624305 (N.D.
Ohio 2006) ...................................................................................................................12

Davis v. DCB Finance Corp., 259 F. Supp. 2d 664 (S.D. Ohio 2003) ........................................19

DeNune v. Consolidated Capital of North America, Inc., 288 F. Supp. 2d 844 (N.D. Ohio
2003) ............................................................................................................................13

Executone of Columbus, Inc. v. Inter-tel, Inc., No. 2:06-CV-00126, 2007 U.S. Dist.
LEXIS 29360 (S.D. Ohio April 16, 2007) ..............................................................................20

Fair v. State Farm Fire & Cas. Co., 426 F. Supp. 2d 672 (N.D. Ohio 2006)................................12

Heidtman Steel Products, Inc. v. Compuware Corp., 168 F. Supp. 2d 743, 751 (N.D.
Ohio 2001) ...................................................................................................................14

In re Amcast Indus. Corp., 365 B.R. 91 (S.D. Ohio 2007)............................................................19

Integrated Molding Concepts, Inc. v. Stopol Auctions, No. 1:07CV2617, 2007 WL
3001385 (N.D. Ohio, Oct. 11, 2007) ..............................................................................13, 14

Jean v. Works, No. 1:04CV1904, 2006 WL 1966644 (N.D. Ohio July 5, 2006)(Slip
Copy)..............................................................................................................................13

Jones v. Lakeview School Dist., No. 4:06cv630, 2007 WL 2084341 (N.D. Ohio July 19,
2007) ..............................................................................................................................8

Mickowski v. Visi-Trak Worldwide, LLC, 321 F. Supp. 2d 878 (N.D. Ohio 2003)........................

Morgan v. Church's Fried Chicken, 829 F.2d 10 (6th Cir. 1987)............................................. 7-8

Rare Coin Enterprises Ltd. v. Chrans, No. 3:05 CV 7473, 2006 WL 2373281 (N.D. Ohio
Aug. 16, 2006) ...............................................................................................................19

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434 (6th Cir. 1988)................................7, 8

Stainbrook v. Fox Broad. Co., No. 3:05 CV 7380, 2006 WL 3757643 (N.D. Ohio Dec.
19, 2006)(Slip Copy). ........................................................................................................20

**STATE CASES**

Blount v. Smith, 12 Ohio St. 2d 41, 231 N.E.2d 301 (1967)...........................................9

Bungard v. Department of Job & Family Services, No. 07 AP-447, 2007 WL 4171105,
   2007-Ohio-6280 (Ohio App. 11th Dist. Nov. 27, 2007)...........................................18

Colvin v. Globe Am. Cas. Co., 69 Ohio St. 2d 293, 432 N.E.2d 167 (1982)..............................11

Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n, 54 Ohio St. 3d 1, 560
   N.E.2d 206 (1990)...........................................................................12, 17

Fontbank, Inc. v. Compuserve, Inc., 138 Ohio App. 3d 801 (Ohio App. 10th Dist. 2000)...........19

Miller v. Progressive Cas. Ins. Co., 69 Ohio St. 3d 619, 635 N.E.2d 317 (1994).........................11

Moore v. Sweda, 27 Ohio App. 3d 38, 499 N.E.2d 371 (Ohio App. 9th Dist. 1985)....................18

Morantz v. Ortiz, No. 07AP-597, 2008 WL 642630, 2008-Ohio-1046 (Ohio App. 10th
   Dist. March 11, 2008)(Slip Copy) ...........................................................9

R.E. Holland Excavating Co., Inc. v. Montgomery County Bd. of Comm'rs, 133 Ohio
   App. 3d 837, 729 N.E.2d 1255 (Ohio App. 2d Dist. 1999) ....................................12

Royal Indemnity Co. v. Baker Protective Services, 33 Ohio App. 3d 184, 515 N.E.2d 5
   (Ohio App. 2d Dist. 1986) .................................................................9, 10

TLC Healthcare Servs., L.L.C. v. Enhanced Billing Servs., L.L.C., No. L-08-1121, 2008
   WL 3878349, 2008-Ohio-4285 (Ohio App. 6th Dist. Aug. 22, 2008) ....................................9

**FEDERAL STATUTES**

Fed. R. Civ. P. 12(b)(6)........................................................................1, 7, 13, 20

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SKURKA AEROSPACE, INC., | ) | CASE NO.: 1:08-cv-01565 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| vs. | ) | |
| | ) | |
| EATON AEROSPACE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF
EATON AEROSPACE'S MOTION TO
DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant Eaton Aerospace LLC ("Eaton") submits this memorandum in support of its

Motion to Dismiss Count III, Count IV, Count V, Count VI, and Count VIII of the Second

Amended Complaint filed by Skurka Aerospace, Inc. ("Skurka") pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.

**INTRODUCTION AND PROCEDURAL HISTORY**

Skurka asserted in its original Complaint that Eaton failed to turn over certain intellectual

property as provided for in an Asset Purchase Agreement ("APA") the parties entered into almost

four years ago, and Skurka brought a claim for breach of that agreement as well as various tort

and statutory claims arising from the same premise.  Each of those claims was premised on

alleged duties that arose – if at all – from a contractual obligation the parties ***agreed would

expire on June 30, 2007***, or two years after the closing date of the APA.

Eaton filed a Motion to Dismiss Skurka's untimely contract and tort claims on the ground

that the agreed-upon time limitation period for asserting claims relating to any intellectual

property rights granted under the APA had long expired.  Eaton also asserted that Skurka's

claims were barred by the parties' agreement that indemnification is the ***exclusive remedy*** for a breach of the APA, and by Ohio's economic loss doctrine.

In response, Skurka obtained leave from this Court to file a First Amended Complaint. Skurka's First Amended Complaint, however, added nothing of legal substance to its Complaint, and Eaton therefore renewed its Motion to Dismiss in response to the First Amended Complaint.

Skurka then obtained leave from this Court to file a *Second* Amended Complaint in order to "plead additional facts learned during the initial phase of discovery." *See Skurka's Motion for Leave to File Second Amended Complaint Intstanter* at p.1.  Many of the new allegations in the Second Amended Complaint relate to Skurka's claims that Eaton breached the Supply Agreement allegedly by misclassifying aftermarket orders as OEM orders, claims Eaton is not moving to dismiss at this time, or to Skurka's potential defenses to Eaton's claims regarding Skurka's production of nonconforming goods.

To the extent that Skurka's Second Amended Complaint adds allegations regarding the intellectual property, most simply expand on allegations already in the First Amended Complaint and the rest address how Eaton allegedly used the intellectual property it retained. Because these new allegations in the Second Amended Complaint fail to address, let alone resolve, any of the issues raised in Eaton's Motion to Dismiss, that Motion is hereby renewed in its entirety for the reasons set forth below and as previously argued.

## STATEMENT OF ALLEGATIONS

The allegations in Skurka's Second Amended Complaint remain largely the same, with few material changes from the original complaint.  Each of the counts in the Second Amended Complaint continues to focus on the obligations contained in two contracts: (1) the APA, executed on or about June 30, 2005, under which Skurka acquired substantially all of the assets

and certain liabilities of an Eaton division that manufactured electric motors used in aircraft door assemblies; and, (2) a Supply Agreement, executed contemporaneously with the APA, under which Skurka became the sole supplier of these electric motors to Eaton.  (Second Amended Complaint ¶¶ 5, 7.)  The breach of contract claim asserted under the APA and the tort claims and remedies arising from the same premise, however, are subject to dismissal.

### A.   The Asset Purchase Agreement's Limitations on Remedies.

The parties agreed in the APA to limit their remedies for claims arising from that agreement by, among other things, specifying indemnification as the parties' exclusive remedy, establishing required procedures for asserting an indemnification claim, limiting the period in which claims could be brought, and excluding consequential, incidental and special damages. (APA, Articles 15 and 16.)  These agreed limitations preclude Skurka's claims in this litigation.

***Skurka and Eaton specified indemnification as the exclusive remedy
and established procedures for asserting an indemnification claim.***

Pursuant to Section 16.1 of the APA, Eaton agreed to indemnify Skurka for any losses incurred by Skurka by reason of any breach of the agreement.  The parties agreed that the indemnification provisions of Article 16 would be the ***exclusive remedy*** for Skurka or Eaton with respect to claims arising from the Agreement.  (APA, Section 16.7.)

Moreover, the parties negotiated and agreed that a party's claim for indemnification would not be perfected until certain conditions were met.  Section 16.3 of the APA provides that no claim for indemnification arises until any such claim (or aggregate of multiple claims) exceeds $100,000.  Once a qualifying claim arose, the parties agreed that they would follow a specific procedure to assert it.  Pursuant to Section 16.4, the party seeking indemnification is required to provide "written notice of any Eligible Claim" to the other party within thirty days of having become aware of the existence of such a claim.  Thereafter, the party from whom

indemnification is sought is required to deliver a response specifically addressing its position regarding liability for any or all of the claimed amounts. Then the parties are required to adhere to specific requirements regarding the calculation and payment of any claimed amounts, and, if the claim is not resolved, to follow the dispute resolution procedures set forth in Article 18. (APA, Sections 16.8 and 16.9.) As noted above, the parties agreed that these procedures constitute their exclusive remedy for claims arising out of the APA.

### *Skurka and Eaton agreed that all claims arising from the Asset Purchase Agreement had to be brought within two years of the closing date.*

In addition to agreeing to an exclusive procedural process to address claims arising out of the APA, the parties agreed that all such claims (with certain specific exceptions not at issue in this case) would be governed by a two-year limitations period.

Pursuant to Section 15.1, the parties agreed that any "unasserted claims and causes of action" with respect to any "representations, warranties, covenants and agreements" in the APA would be barred after two years from the date of closing. The two year limitations period would apply unless a claim was subject to one of the specific exceptions identified in Section 15.1(a)-(d) or was set forth in a formal Notice of Claim pursuant to Section 16.1 delivered prior to the expiration of the two year period.

Because unasserted claims and causes of action with respect to the transfer of Intellectual Property under the APA are **not** one of the exceptions to the two-year limitations period, all such claims were barred after June 30, 2007 – which is two years after the closing date of the APA. While Section 15.2 of the APA permits the limitations period to be tolled where a Notice of Claim has been served within the applicable period, there must be at least an allegation that a formal Notice of Eligible Claim meeting the detailed requirements of Section 16 of the APA was served on the other party within the time period.

(4)

***Skurka and Eaton agreed to exclude consequential, incidental and
special damages and to cap the amount of all claims for indemnification.***

Even as to claims that have been properly and timely asserted, the parties agreed to
substantively limit their available remedies.  First, the parties agreed that neither Skurka nor
Eaton could recover consequential, special or incidental damages arising from their obligations
under the APA.  (APA, Section 16.11.)  In addition to limiting the type of damages recoverable,
Skurka and Eaton agreed to limit the total amount of any such damages.  The parties agreed that
the maximum amount recoverable for any claim or claims arising under the APA (with certain
limited exceptions) would be five million dollars.  (APA, Section 16.10.)

**B.**     **Skurka's Allegations Relating to Delivery of Intellectual Property.**

Skurka alleges that Eaton was required pursuant to Section 2.1 of the APA to transfer to
Skurka all of the Intellectual Property used to operate the business by the closing date.  (Second
Amended Complaint ¶6.)  Skurka further alleges that on several occasions it made written and
verbal requests that Eaton comply with the terms of the APA and provide all of the Intellectual
Property to Skurka.  (Second Amended Complaint ¶11.)  Although Skurka does not identify the
particular Intellectual Property that it is claiming Eaton has retained, Skurka alleges that Eaton
has failed to transfer all of the Intellectual Property called for in the APA.  (Second Amended
Complaint ¶¶25-26.)

Based on Eaton's alleged failure to deliver all of the Intellectual Property, Skurka claims
in Count III that Eaton has breached the APA.  Similarly, Skurka asserts claims for conversion
(Count IV) and misappropriation of trade secrets (Count V) based on Eaton's alleged retention of
the Intellectual Property in contravention of its obligations under the APA. Further, Skurka seeks
the remedies of replevin (Count VI) and an accounting (Count VIII) to enforce Eaton's alleged
obligation under the APA to turn over Intellectual Property.

Even though Skurka's own allegations make clear that Eaton's obligation to physically transfer Intellectual Property arises under the APA, Skurka makes no allegation that it served a Notice of Claim seeking indemnification as required under Section 16.4 and 15.2 of the APA. Nor does Skurka allege that its claim to recover Intellectual Property meets the $100,000 threshold amount as required under Section 16.3.  Indeed, Skurka does not even characterize any of its multiple causes of action relating to return of Intellectual Property as a claim for "indemnification," which is the exclusive remedy under Section 16.7.

      **C.**      **Skurka's Newly Added Allegations.**

In its Second Amended Complaint, Skurka does nothing to cure the deficiencies of its prior pleadings.  Instead, Skurka merely expands on its previous allegations that Eaton knowingly retained the intellectual property (*see, e.g.,* Second Amended Complaint at ¶¶17, 18, 27), and adds allegations regarding Eaton's supposed use of the retained intellectual property to obtain motors from third-party sources (*see, e.g.,* Second Amended Complaint at ¶¶7, 28, 29, 58-60, 95).  These allegations have no bearing on Eaton's arguments that Skurka failed to comply with the APA's procedures for bringing claims against Eaton, including the contractual requirement to bring claims for indemnification within two years of signing the APA, that indemnification is the exclusive remedy for breach of the APA, and that Skurka's claims are barred by the economic loss doctrine.

**LAW AND ARGUMENT**

**I.**      **The Legal Standard on a Motion to Dismiss.**

Skurka has long had notice of Eaton's defenses under the APA and under Ohio law, and it was specifically provided with an opportunity to assert a claim for indemnification and plead compliance with the APA's detailed procedures for invoking such a claim.  Yet Skurka has, once

again, simply alleged generally that it meets the requirements of the APA in bringing the present claims without setting forth supporting factual allegations.

Under Rule 12(b)(6), a claim must be dismissed where, accepting all of the factual allegations in the complaint as true, the allegations are insufficient to establish a claim for relief. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  A complaint must include "direct or inferential" allegations regarding all the material elements of the claims alleged.  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  The United States Supreme Court has recently gone further, stating that:  "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."  *Ashcroft v. Iqbal*, 566 U.S.---, 129 S. Ct. 1937, 1954, --- L. Ed. 2d. --- (2009).  *See also Bell Atlantic Corp. v. Twombly*, - - - U.S. - - -,  127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Here, Skurka's broad and conclusory statements in the Second Amended Complaint that "after the closing, pursuant to its rights under the APA and the Supply Agreement, Skurka made several written and verbal requests that Eaton provide all of the Intellectual Property" and that Skurka "performed all the terms and conditions of the APA and has satisfied all conditions precedent thereunder" are simply insufficient to demonstrate compliance with the detailed and formal notice, demand, and alternative dispute procedures set forth in Article 16 of the APA. (Second Amended Complaint ¶¶11, 96.)  Nor is the Court required to infer that Skurka provided Eaton with a formal claim for indemnification under the exclusive remedy provision of Section 16.7 of the APA from the generic allegations that "Sievers contacted Kevin Sullivan, Eaton's

Supply Chain Manager, regarding the outstanding Intellectual Property" and "Tom Sievers, then Vice President of Skurka, advised Eaton in writing of Skurka's claim to the Intellectual Property that had not been transferred."  (Second Amended Complaint ¶¶15, 99.)

Federal courts in Ohio have consistently held that a claimant must do more than make bare assertions of legal conclusions, and that unwarranted factual inferences need not be accepted as true on a motion to dismiss.  *Jones v. Lakeview School Dist.*, No. 4:06cv630, 2007 WL 2084341 (N.D. Ohio July 19, 2007) (Slip Copy) (Exhibit A); *Mickowski v. Visi-Trak Worldwide, LLC*, 321 F. Supp. 2d 878 (N.D. Ohio 2003).  Even though a complaint need not contain detailed factual allegations, "[w]hen a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist."  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  Not only must a complaint contain the specific facts that would dominate a case, those "[f]actual allegations must be enough to raise a right to relief above the speculative level ..."  *Bell Atlantic Corp.*, 127 S. Ct. 1955, at 1964-65.  Yet Skurka's claims in the Second Amended Complaint fall far short of this standard.

Skurka's attempts to stretch vague and conclusory allegations into proof of compliance with specific contractual provisions is well beyond what is permitted under the law.  On its face, Skurka's contract claim under the APA is deficient – it is inconsistent with the exclusive remedy permitted by the APA and was filed long after the agreed limitations period – and Skurka's additional allegations that it has "performed all the terms and conditions of the APA" does not overcome these deficiencies.  Moreover, construing this vague allegation to mean that Skurka served a Notice of Claim would be particularly inappropriate here, given that this is Skurka's **third** attempt to allege a claim under the APA.  Rather, given that Eaton raised this argument in each of its previous Motions to Dismiss, the absence of a specific allegation that Skurka served a

Notice of Claim within the agreed limitations period is telling.  Finally, Skurka cannot avoid the defects in its contract claim by refashioning the same facts as tort claims.  Ohio law makes clear that such claims are barred by the economic loss rule, and Skurka's attempts to avoid application of this rule are unavailing.

## II.     Skurka's Claim for Breach of the Asset Purchase Agreement (Count III) Should be Dismissed.

### A.     *Skurka Has Failed to Assert a Claim for Indemnification as Required by the Asset Purchase Agreement.*

The APA makes indemnification the exclusive remedy for any alleged breach of the parties' obligations and sets a minimum threshold claim amount of $100,000.  (APA, Articles 16.1, 16.3, 16.7.)  Skurka and Eaton also agreed to follow specific procedures governing the presentation, timing and resolution of claims for indemnification, and to preclude the recovery of consequential, special, or incidental damages by either party.  (APA, Articles 15.1, 16.4, 16.11.)  Skurka's failure to allege compliance with these exclusive remedy requirements warrants dismissal of its breach of contract claim under the APA.

Skurka and Eaton's agreement to limit the nature and scope of remedies for claims arising from the APA is enforceable.  In general, parties are free to contract with the expectation that their contract will be enforced as written.  *See Blount v. Smith*, 12 Ohio St. 2d 41, 47, 231 N.E. 2d 301, 305 (1967) ("The right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to write and to speak without restraint").  Accordingly, courts have held that contractual language limiting the parties' liability or remedies should be enforced absent vagueness, ambiguity, or unconscionability. *Morantz v. Ortiz*, No. 07AP-597, 2008 WL 642630, at *7, 2008-Ohio-1046, ¶26 (Ohio App. 10th Dist. March 11, 2008) (Slip Copy) (Exhibit B); *TLC Healthcare Servs., L.L.C. v. Enhanced Billing Servs.*, L.L.C., No. L-08-1121, 2008 WL 3878349, at *3, 2008-Ohio-4285, ¶19 (Ohio

App. 6th Dist. Aug. 22, 2008) ("parties may agree to limit or expand the scope of the remedies available upon breach with an express provision in a contract") (Exhibit C); *see also Royal Indem. Co. v. Baker Protective Servs.*, 33 Ohio App. 3d 184, 186, 515 N.E. 2d 5, 7 (Ohio App. 2d Dist. 1986) ("An important function of contract law is to enforce the parties' agreed-upon allocation of risk").

The provisions in the APA setting forth the available remedies and procedures for claims resolution are neither ambiguous nor unconscionable.  Article 16.1 sets forth those claims as to which Skurka will be indemnified by Eaton.  Article 16.4 provides clear steps for initiating a claim for indemnification, and Article 18 unambiguously sets out claims resolution procedures. These provisions are not subject to plausible competing interpretations.  Moreover, the claims resolution and limitation of remedies provisions apply equally to ***both*** parties, and are reasonably tied to the business risks undertaken by the parties in that they provide for indemnification of actual losses.  The provisions, therefore, are not unconscionable.  Under Ohio law, these provisions are enforceable, and the parties are bound by them.

Skurka has not alleged that it followed the contractually agreed-upon claims procedures. The Second Amended Complaint does not state that Skurka provided a notice of claim to Eaton nor that its damages meet the $100,000 claims threshold provided for in the APA.  These procedures are conditions precedent to the exclusive remedy of indemnification under the APA, and Skurka's failure to allege compliance with them constitutes a failure to plead necessary elements of its claim.  The Sixth Circuit has observed: "[i]t is well established under Ohio contract law that a party must comply with all express conditions to be performed in case of breach before it can claim damages by reason of the breach." *Au Rustproofing Center, Inc. v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir. 1985).  Moreover, the Court in *Au Rustproofing*

specifically held that "[a] right of action requiring notice as a condition precedent cannot be enforced unless the notice provided for has been given."  *Id.*  Because Skurka has not alleged compliance with the applicable contractual requirements, Skurka's claim for breach of the APA should be dismissed.

> **B.**     ***Skurka's Claim is Barred by the Asset Purchase Agreement's Limitations Period.***

In addition to failing to comply with the agreed-upon procedural requirements, Skurka's claim for breach of the APA should be dismissed as untimely.  Article 15.1 of the APA contains a claims survival provision that provides:  "[a]ll of the representations, warranties, covenants and agreements of the Seller and Buyer contained in this Agreement and all unasserted claims and causes of action with respect thereto shall terminate upon expiration of the two years following the Closing Date . . . ," excluding certain representations and warranties not at issue in the Second Amended Complaint.  The Closing Date of the APA was June 30, 2005, more than three years before the original Complaint was filed.  Therefore, on its face, Skurka's breach of contract claim asserted under the APA is time-barred and should be dismissed.

Contractual provisions shortening the statutory limitation period are enforceable as long as the period set forth in the contract is reasonable.  *Miller v. Progressive Cas. Ins. Co.*, 69 Ohio St. 3d 619, 624, 635 N.E. 2d 317, 321 (1994) ("We are . . . in agreement with [] the principle recognized in Colvin . . . that '[g]enerally, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, as between the parties, the time for bringing an action on such contract to a period less than that prescribed in a general statute of limitations provided that the shorter period shall be a reasonable one.'") (*citing Colvin v. Globe Am. Cas. Co.*, 69 Ohio St. 2d 293, 295, 432 N.E. 2d 167, 169 (1982)).

The APA was negotiated by sophisticated parties who reasonably concluded that after two years of owning and running the business, Skurka should no longer be permitted to bring claims that it did not receive everything that was due to be delivered at the closing.  Not surprisingly, Courts have routinely upheld shorter limitations periods.  *See, e.g., R.E. Holland Excavating Co., Inc. v. Montgomery County Bd. of Comm'rs*, 133 Ohio App. 3d 837, 842, 729 N.E. 2d 1255, 1259 (Ohio App. 2d Dist. 1999) (finding sixty-day limitation period for filing complaint reasonable); *Fair v. State Farm Fire & Cas. Co.*, 426 F. Supp. 2d 672, 677 (N.D. Ohio 2006) (upholding one-year limitations period in insurance contract as reasonable); *Chevron Prods. Co. v. Cascade Dist., Inc.*, No. 5:05-CV-2007, 2006 WL 1624305, at *7-8 (N.D. Ohio 2006) (upholding one-year limitations period and entering judgment on contract claim under substantively identical California law) (Exhibit D).  Because Skurka's breach of contract claim was brought outside the two-year limitations period, Skurka's claim for breach of the APA should be dismissed.

## III.   Skurka's Claim for Conversion (Count IV) Should be Dismissed.

Skurka's conversion claim is barred by the economic loss rule.  The Ohio Supreme Court has held that tort law may not be used to obtain relief for claims arising out of contractual duties. *See Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 54 Ohio St. 3d 1, 7, 560 N.E. 2d 206, 211 (1990)("Tort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.).  This doctrine, well-established in Ohio law, is sometimes referred to as the "economic loss rule."  It dictates that Skurka cannot be compensated in tort for claims pertaining to Eaton's alleged failure to turn over Intellectual Property, which arises exclusively from contractual obligations.

Skurka's claim for conversion seeks to recover for Eaton's alleged interference with Skurka's right to possession of certain intellectual property – a right that is admitted by Skurka to arise under either of two contracts: the APA and/or the Supply Agreement.  (Second Amended Complaint ¶111-12.)  But a conversion action may only lie against a party to a contract where the conversion claim alleges the breach of a duty that is owed to the plaintiff separate from obligations created by the contract between the parties.  *Jean v. Works*, No. 1:04CV1904, 2006 WL 1966644, at *5 (N.D. Ohio July 5, 2006) (Slip Copy) (Exhibit E); *DeNune v. Consolidated Capital of North America, Inc.*, 288 F. Supp. 2d 844, 854 (N.D. Ohio 2003).  Skurka has failed to allege the breach of any duty owed separately from its two contracts with Eaton, and its conversion claim is thus merely a re-pleading of its breach of contract claims, barred by the economic loss rule.

This Court confronted a similar situation in *Jean*, where plaintiff distributors sought to assert a conversion claim based on allegations that a manufacturer had wrongfully withheld certain property owned by the distributors.  Plaintiffs asserted that their claim for breach of fiduciary duty was sufficient to meet the requirement that they allege a duty separate from their contracts.  However, citing *DeNune*, the Court found that plaintiffs had not alleged a duty owed "independent of the distributor agreements" and dismissed plaintiffs' conversion claim pursuant to Rule 12(b)(6).  *Jean, supra,* 2006 WL 1966644, at *4-5.

Federal courts applying Ohio law have dismissed conversion and other intentional tort claims under the economic loss rule on multiple occasions where the obligation to turn over property is coextensive with a contractual duty.  For example, in *Integrated Molding Concepts, Inc. v. Stopol Auctions*, No. 1:07CV2617, 2007 WL 3001385 (N.D. Ohio, Oct. 11, 2007) (Exhibit F), this Court dismissed conversion and fraud claims on the basis that – as here – those

torts were premised on the same conduct, with the same damages, as those upon which the

plaintiff's breach of contract claim was based. *Id.* at *5-6 ("The existence of a contract generally

excludes the opportunity to present the same case as a tort claim.").  Any claim by Skurka that it

is entitled to assert a conversion claim based simply on its right to possess the materials does not

survive the Court's analysis in *Integrated Molding*:  "That the alleged acts would be tortious

conduct under noncontractual circumstances does not make a breach of a contract into a tort.  It

is not a tort to breach a contract, no matter how willful or malicious." *Id.*[1]

Here, Skurka has not alleged any separate or independent duty, fiduciary or otherwise,

outside of Eaton's alleged contractual duties.  Indeed, Skurka affirmatively alleges that its right

to possession of the intellectual property arises under either one of two contracts: the APA and/or

the Supply Agreement.  (*See* Second Amended Complaint ¶¶111-12.)  Skurka seeks the same

relief that it seeks in its breach of contract claims, namely, damages for Eaton's alleged failure to

turn over intellectual property as required by the APA and/or Supply Agreement.  Because

Skurka's conversion claim does not allege the breach of any duty owed separately from the

contractual obligations, it must be dismissed.

## IV.    Skurka's Claim for Misappropriation of Trade Secrets (Count V) Should be Dismissed.

### A.    *Skurka's Allegations Do Not Establish that Eaton's Possession of Intellectual Property is "Improper" as Required by the Uniform Trade Secrets Act.*

Skurka's attempt to fashion a trade secret claim out of Eaton's alleged failure to turn over

intellectual property under the APA, while creative, does not square with the language of

---

[1] Chief Judge Carr applied this same "no intentional tort claim" arising from contractual duties analysis in *Heidtman Steel Products, Inc. v. Compuware Corp.*, 168 F. Supp. 2d 743 (N.D. Ohio 2001).  Applying Michigan law, which has a narrower definition of the "economic loss rule" than Ohio, Judge Carr dismissed plaintiff's fraud claim because plaintiff had not "presented facts establishing Compuware's breach of duty beyond its contractual duty." *Id.* at 751.  That rationale would, under Ohio law, equate to a dismissal based on the economic loss rule.  The law out of this Court, therefore, continues to demonstrate the viability of the economic loss rule to bar ***all*** tort claims that allege the violation of rights arising solely from contractual duties.

applicable statue.  Under the Uniform Trade Secrets Act ("UTSA"), "misappropriation" of a

trade secret is defined as:

> (1) Acquisition of a trade secret by someone who knows or has reason to know the trade secret was acquired by improper means; or
>
> (2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:
>
> (a) Used improper means to acquire knowledge of the trade secret;
>
> (b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;
>
> (c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.  R.C. §1333.61(B).

Skurka's allegations do not satisfy any of the alternative definitions of "misappropriation"

set forth in the statute.  Subsections (B)(1) and (B)(2)(a), as well as the first component of

subsection (B)(2)(b) require that Skurka establish that Eaton used "improper means" to acquire

Skurka's trade secrets.  The statute defines "improper means" as "theft, bribery,

misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage

through electronic or other means."  R.C. §1333.61(A).

Skurka has not pled any facts to demonstrate that Eaton's acquisition of the intellectual

property was achieved through improper means, nor can it, as all of the intellectual property in

question ***originally belonged to Eaton***.  There is no allegation that Eaton did anything improper

in acquiring the intellectual property, and Skurka has clearly alleged that Eaton acquired the

intellectual property <u>before</u> Skurka had any ownership interest in it.  Without such an allegation,

Skurka has not set forth a claim of misappropriation under Section 1333.61(B)(1) or (B)(2)(a), nor under the first component of subsection (B)(2)(b).

Nor do Skurka's allegations satisfy either of the remaining components of subsection (B)(2)(b).  Both would require that Eaton's knowledge of the alleged trade secrets was "derived" or "acquired" under circumstances giving rise to a duty to maintain its secrecy or limit its use. Once again, Skurka's allegations make clear that Eaton's knowledge of the alleged trade secrets preexisted Skurka's ownership.  There is no allegation that Eaton derived or acquired knowledge of the alleged trade secrets under the auspices of a confidentiality agreement or any other circumstances that would satisfy this portion of the statute.

Finally, Skurka also has failed to allege that Eaton's acquisition of the alleged trade secret was by accident or mistake, as provided in Section 1333.61(B)(2)(c).  Again, Skurka cannot make such an allegation because the trade secrets in question were originally Eaton's property, and therefore could not have been acquired by accident or mistake.

Skurka's attempt to recast its breach of contract claim as one for misappropriation of trade secrets fails because Skurka has not alleged, and cannot allege, facts that establish that Eaton engaged in any conduct that could reasonably be characterized as "misappropriation," as defined by UTSA.  Therefore, Eaton's claim for misappropriation of trade secrets must be dismissed.

**B.** ***Skurka's Misappropriation of Trade Secrets Claim is Barred by the Economic Loss Rule.***

Skurka's claim for misappropriation of trade secrets is based entirely on rights Skurka alleges arise under the APA and/or the Supply Agreement.  Skurka claims that the intellectual property it purchased as part of the APA and/or the Supply Agreement constitutes trade secrets and that by allegedly failing to turn the materials over to Skurka, Eaton has misappropriated

Skurka's trade secrets.  The problem with this theory is that it simply amounts to a re-casting of

Skurka's two contract claims, both of which seek damages for the very same conduct, namely,

Eaton's alleged retention of Skurka's intellectual property.

Skurka's two contract claims and its misappropriation claim all arise from the premise

that Eaton has wrongfully retained Skurka's intellectual property.  Skurka's effort to re-cast its

contract claims in this manner is barred by the economic loss rule, which limits Skurka to

contract remedies for claims that arise out of contractual obligations.  *Floor Craft Floor*

*Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 54 Ohio St. 3d 1, 7, 560 N.E. 2d 206, 211

(1990).  In other words, Skurka cannot seek to recover damages under UTSA where the parties

entered into contracts governing their conduct with respect to the intellectual property and

contemplated that their duties would be governed by those contracts.  Therefore, Skurka's claim

for misappropriation of trade secrets should be dismissed.

**V.     Skurka's Claim for Replevin (Count VI) Should be Dismissed.**

Skurka's replevin claim is based solely upon its allegations that Eaton has retained

property to which Skurka is entitled under the APA and/or the Supply Agreement.  *See* Second

Amended Complaint ¶143 ("Pursuant to the APA and the Supply Agreement, Skurka possesses a

complete ownership interest in the Intellectual Property identified and defined in the APA.")

Skurka thus concedes it has no other claim to the property at issue.  In essence, Skurka's replevin

claim amounts to a remedy for Eaton's alleged breaches of contract.  As such, Skurka's recovery

in replevin is completely dependent upon whether Skurka has a valid claim for breach of

contract.  Because, as demonstrated above, Skurka has failed to act within the contractual

limitations period, Skurka has not alleged a valid breach of contract claim and therefore has no

basis to replevy the intellectual property.

Moreover, the APA limits available remedies under the contract to indemnification.  *See* Sections II.A. and III.B., *supra*.  Skurka may not bring non-contract claims in an attempt to avoid the remedies and limitations agreed to in the APA.  *See, e.g., Bungard v. Department of Job & Family Services,* No. 07 AP-447, 2007 WL 4171105, 2007-Ohio-6280 (Ohio App. 11th Dist. Nov. 27, 2007), at *5.  Although Skurka's brief mention of the Supply Agreement in its claim for replevin in the First Amended Complaint remains in the Second Amended Complaint, this cannot be used by Skurka as a backdoor attempt to avoid the restrictions on remedies and the time for asserting a claim under the APA.  Skurka has not pled that any provision in the Supply Agreement provided for the physical ***sale and transfer*** of intellectual property which Skurka now seeks to possess by replevin.  Rather, the Supply Agreement specifically envisions use of the intellectual property by Eaton under certain circumstances.  (Supply Agreement, Sections 1.5 and 3.3).

Because the APA limits Skurka's remedies for breach of the APA to indemnification, and because the APA is the only contract that transferred ownership rights in the intellectual property, Skurka's claim for replevin is barred by the parties' agreement and should be dismissed.

## VI.    Skurka's Claim for Accounting (Count VIII) Should be Dismissed.

In Count VIII, Skurka asserts a claim for an accounting of: (1) all of Skurka's intellectual property remaining in Eaton's possession; and, (2) the pricing classification of all products sold to Eaton under the Supply Agreement from July 1, 2005 to the present.  Skurka has not set forth allegations that establish any right to an accounting.

"An action for an accounting seeks a determination by a court of what may be due the respective parties as a result of the relationship between them."  *Moore v. Sweda*, 27 Ohio App. 3d 38, 39, 499 N.E. 2d 371, 373 (Ohio App. 9th Dist. 1985).  The right to an accounting arises

out of a fiduciary or trust relationship. *Rare Coin Enterprises Ltd. v. Chrans,* No. 3:05 CV 7473, 2006 WL 2373281, at *1 (N.D. Ohio Aug. 16, 2006) (Exhibit G). In the absence of a special relationship, "requests for an accounting … do not describe independent causes of action and are properly dismissed." *In re Amcast Indus. Corp.*, 365 B.R. 91 (S.D. Ohio 2007).

Similar to what Eaton requests the Court to do here, in *Fontbank, Inc. v. Compuserve, Inc.*, 138 Ohio App. 3d 801 (Ohio App. 10th Dist. 2000), the trial court *granted judgment on the pleadings* against the plaintiff on its cause of action for an accounting where, as here, the plaintiff alleged no special relationship between the parties other than a contractual relationship. But even if Skurka had attempted to allege generally a special relationship between Eaton and Skurka, this would not be enough. Rather, a claim for an accounting must state facts clearly demonstrating the plaintiff's right to the accounting. *Davis v. DCB Finance Corp.*, 259 F. Supp. 2d 664, 674 (S.D. Ohio 2003). "A bare allegation that the plaintiff is entitled to receive an accounting without providing any legal basis therefore is not sufficient to state a claim." *Id.*

Skurka has not alleged a relationship of trust between Skurka and Eaton, nor has it stated any other legal basis pursuant to which Skurka would be entitled to an accounting. Eaton and Skurka's relationship is solely a contractual one. Eaton has no fiduciary or other special duty to Skurka. Because the relationship between Eaton and Skurka does not include the right to an accounting, Skurka's claim for an accounting must be dismissed.

Moreover, in connection with Skurka's request for an accounting of intellectual property under the APA, Skurka's claim must be dismissed because Skurka's only potential right to such property arises under an agreement that was no longer enforceable after the expiration of the limitations period. Therefore, even if an accounting was an available remedy for a breach of

contract claim under these circumstances, which it is not, Skurka has no current claim to an accounting under the APA because the limitations period for such claims has expired.

Skurka also has not adequately pled any basis for its request for an accounting of pricing practices under the Supply Agreement.  Under Ohio law, where an adequate remedy at law is available, a plaintiff cannot resort to equity.  *Stainbrook v. Fox Broad. Co.*, No. 3:05 CV 7380, 2006 WL 3757643, at *4-5 (N.D. Ohio Dec. 19, 2006) (Slip Copy) (no right to accounting where relief sought adequately covered by breach of contract claim and information sought obtainable through normal discovery) (Exhibit H).

In its accounting claim, Skurka seeks to recover payment for products sold at allegedly incorrect prices pursuant to the Supply Agreement.  The requested relief is identical to that sought by its claim for breach of the Supply Agreement (Count I).  But Ohio law makes it clear that claims for accounting are disfavored in all but the most limited of circumstances:  "It will be the rare case where an equitable accounting lies, since legal remedies are more adequate; discovery is liberal under the Federal Rules of Civil Procedure; and the requirement of inadequacy of remedy at law remains the same."  *Executone of Columbus, Inc. v. Inter-tel, Inc.*, No. 2:06-CV-00126, 2007 U.S. Dist. LEXIS 29360, at *11 (S.D. Ohio April 16, 2007) (Exhibit I).  Because there is an adequate remedy at law, and because Skurka has pled no facts establishing a right to an accounting, Skurka's claim for an accounting must be dismissed.

## CONCLUSION

For the foregoing reasons, Eaton Aerospace LLC respectfully requests pursuant to Fed. R. Civ. P. 12(b)(6) that the Court dismiss Count III, Count IV, Count V, Count VI, and Count VIII of Skurka Aerospace, Inc.'s Second Amended Complaint.

## LOCAL RULE 7.1 CERTIFICATION

This case has been assigned to the Standard track.  This Memorandum in Support of

Eaton Aerospace LLC's Motion to Dismiss adheres to the page limitations set forth in Local Rule

7.1.

Respectfully submitted,

/s Robert F. Ware
James D. Robenalt (#0022165)
Robert F. Ware (#0055515)
Maria A. Citeroni (#0073827)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH  44114
Telephone:  (216) 566-5500
Facsimile:   (216) 566-5800
James.Robenalt@ThompsonHine.com
Robert.Ware@ThompsonHine.com
Maria.Citeroni@ThompsonHine.com
*Attorneys for Defendant*
        Eaton Aerospace LLC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 21, 2009, a copy of *Eaton Aerospace LLC's Motion to Dismiss Plaintiff's Second Amended Complaint* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.


*/s/ Robert F. Ware*

*One of the Attorneys for Defendant*
*Eaton Aerospace LLC*

11454038.2