UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SKURKA AEROSPACE, INC., | ) | Case No.: 1:08 CV 1565 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| EATON AEROSPACE, L.L.C., | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Plaintiff Skurka Aerospace, Inc. ("Skurka" or "Plaintiff") filed a Motion to Compel and a Motion for In Camera Review (ECF No. 114.) Defendant Eaton Aerospace, L.L.C. ("Eaton" or "Defendant") also filed a Motion to Compel Discovery Responses (ECF No. 115.) On September 8, 2011, the court ordered both parties to produce certain documents for in camera review (ECF Nos. 179, 181.) The court has reviewed the documents provided for in camera review. For the foregoing reasons, the court grants in part, and denies in part, Plaintiff's Motion to Compel and Motion for In Camera Review (ECF No. 114), and grants in part, and denies in part, Defendant's Motion to Compel Discovery Responses (ECF No. 115.)

## I.  FACTS AND PROCEDURAL HISTORY

This case primarily involves two contracts, an Asset Purchase Agreement ("APA") that transferred assets from one of Eaton's divisions to Skurka, and a Supply Agreement that required Eaton to purchase specific products from Skurka. The parties are currently involved in discovery-related disputes.

Each party filed a Motion to Compel Discovery Responses, arguing that the opposing party had improperly classified documents as protected from disclosure by the work-product doctrine or the attorney-client privilege. Each Motion was granted in part and denied in part. After examining Plaintiff and Defendant's privilege logs, the court found that some entries did not provide enough information for the court to determine whether the documents corresponding to the entries were protected materials. The court requested that each party provide the documents (or a sample of the documents) corresponding to the inadequate entries for the court to review. The documents fall into the following categories: (1) Skurka's documents allegedly wrongfully withheld as privileged; (2) Eaton's emails allegedly similar to emails already produced to Skurka; and (3) Eaton's documents labeled as work product involving the supplier retention process.

In addition to the documents requested, Eaton, on its own accord, sent the court Confidential Exhibit A to provide more specific information regarding why the documents involving the supplier retention process are protected by the work-product doctrine or attorney-client privilege. The Exhibit consists of a memo that provides an overview of the information presented and several electronically stored documents for the court to review in camera, which Eaton purports will help the court understand why the materials are protected from disclosure. Eaton provided Skurka with a redacted version of the memo. In response, Skurka asserted, in a letter dated September 28, 2011, that Confidential Exhibit A is an ex parte communication that it did not agree to and should be stricken from the record.

## II. LEGAL STANDARD

### A. Motion to Compel Production

Federal Rule of Civil Procedure 37 permits a party to move the court to compel a non-responsive party to comply with discovery if "a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). Furthermore, Rule 37(a)(4) provides, in pertinent part, that "[f]or purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."

### B. Attorney-Client Privilege

Attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The purpose of the attorney-client privilege "is to ensure free and open communications between a client and his attorney." *In re Grand Jury Subpoenas*, 454 F.3d 511, 519-20 (6th Cir. 2006) (citing *Fisher*, 425 U.S. at 403); *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) ("The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure."). The privilege is limited to "only those communications necessary to obtain legal advice" and only applies "where necessary to achieve its purpose." *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) (citing *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir.1986); *Fisher*, 425 U.S. at 403).

The party asserting the privilege bears the burden of proving its existence. *Id.* (citing *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir.1983)). Claims of attorney-client privilege must be "narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit." *Id.* (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997)).

### C. Work-Product Doctrine

The work-product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3). Fed. R. Civ. P. 26(b)(3); *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981). It "protects against the discovery of material 'prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, ... or agent).'" *Eden Isle Marina, Inc. v. U.S.*, 89 Fed.Cl. 480, 496 (2009) (quoting Fed. R. Civ. P. 26(b)(3)(A)).

The court will consider materials to be prepared in anticipation of litigation, if the materials were "'prepared or obtained *because of* the prospect of litigation.'" *United States v. Roxworthy*. 457 F.3d 590, 593 (6th Cir. 2006) (quoting *United States v. Aldman*, 134 F.3d 1194, 1202 (2d Cir. 1998)) (emphasis in original). In determining if materials were prepared "because of" litigation, the court will evaluate "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation was objectively reasonable." *Id.* at 594. However, "a generalized desire to avoid litigation is insufficient to meet the 'in anticipation of litigation' requirement." *In re Grand Jury Proceedings*, 2001 WL 1167497, at *15 (S.D.N.Y. Oct. 3, 2001); *see also Upjohn Co. v. Mova Pharm. Corp.*, 936 F.Supp. 55, 57 (D. P.R. 1996) (finding that when engaging in design practices

that may give rise to patent infringement, a party anticipates litigation in a general sense, but it is overreaching to deem all of such actions protected by the work product doctrine).

The work product doctrine "is distinct from and broader than the attorney-client privilege." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) (quoting *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975)). The purpose of the doctrine is "to allow an attorney to 'assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests.'" *In re Columbia*, 293 F.3d at 294 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). While the work product doctrine protects counsel's conclusions, opinions, and legal theories without exception, it does not protect the underlying factual information contained within the protected document. *See Upjohn Co. v. U.S.*, 499 U.S. 383, 399, 401 (1981). As with the attorney-client privilege, the party asserting protection under the work-product doctrine bears the burden of proving the documents should be protected; *Roxworthy*, 457 F.3d at 593; and that the "anticipated litigation was the 'driving force behind the preparation of each requested document.'" *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (quoting *Roxworthy*, 457 F.3d at 595).

### III. LAW AND ANALYSIS

Broad assertions of privilege, similar to the format of Eaton's privilege log, make it difficult for the court to evaluate claims of privilege. The court ordered Eaton to produce a revised privilege log. Eaton has yet to produce a revised privilege log. In analyzing the documents in camera, the court used the Eaton Privilege Log provided by Skurka as an exhibit to one of Skurka's motions (Eaton Aerospace L.L.C.'s Responses to Skurka's ESI Privilege Log Challenges, Ex. A, ECF No.

158-1.) Eaton's privilege log was incomplete, which complicated the in camera review. Many of Eaton's log entries failed to list the attorneys involved in claims of privilege and specifically how each document satisfied each element of the privilege or protection asserted.

Eaton did submit Confidential Exhibit A, ostensibly, as an aid to the court's review. The court finds that the Exhibit is not prejudicial because it did not change the court's analysis in favor of Eaton, except in one instance. In the latter instance, the information that the court considered during its review is information that Eaton should have put into its privilege log. The court will take liberty to reveal information from Exhibit A that it used in its analysis of this latter claim.

After the court's laborious and thorough review of each document submitted, including Confidential Exhibit A, the court finds that some documents were properly classified as privileged or protected by the work-product doctrine, while others must be produced.

### A. Skurka's Documents Alleged to Be Wrongfully Withheld as Privileged

Skurka submitted documents corresponding to privilege log entries 6121, 9567, 13609, 19614, 19615, and 28552. Skurka's privilege log maintained that each document was protected from discovery by either the work-product doctrine or the attorney-client privilege. Upon review, the court finds that documents 9567, 19614, 19615, and 28552 are protected from discovery by the work-product doctrine. As for documents 6121 and 13609, the court finds that these documents are not covered by the attorney-client privilege, as Skurka has asserted. There is no evidence that either document was submitted to, or prepared at the behest of an attorney for the purpose of obtaining legal assistance. Thus, Skurka has not met its burden of showing the existence of the privilege. Therefore, Skurka must submit documents 2121 and 13609 to Eaton within ten (10) days of this Order.

**B. Eaton's Emails Allegedly Similar to Emails Already Produced to Skurka**

Eaton submitted documents corresponding to privilege log entries 1171–74 and 2089–91. Eaton's privilege log describes these documents as attorney work product. After examination of the documents, the court finds that documents 1171–74 are protected from discovery by the attorney work-product doctrine.

Eaton's privilege log describes document 2089 as an attorney client communication. The email chain begins with communication from Skurka to Eaton employees and counsel, which is not privileged because the communication is from Skurka to Eaton and not between the attorney and client. The next email is from Jim Rogers ("Rogers"), Supply Chain Manager at Eaton, to Ryan Norwood, Buyer at Eaton ("Norwood"). The final communication in the email chain is from Norwood to Rogers and Kevin Sullivan, Eaton employee, where Norwood is interpreting a provision of the Supply Agreement regarding late payments. None of these individuals have been identified as an attorney. Thus, the statements made by Norwood cannot be deemed to be legal advice.

Entries 2090 and 2091 are copies of the same email chain identified by entry 2089. This time, Eaton logs the emails as attorney work product. The discussion, as indicated above, is in regard to determining whether a supplier, Skurka, charged Eaton the correct fees on an invoice. It appears to involve an ordinary business purpose, and there is nothing to suggest that the email was prepared in anticipation of litigation other than Eaton's assertions. Eaton, however, does not identify the name of counsel who allegedly requested that the emails be prepared. Therefore, the court finds that the documents are not protected by the work-product doctrine. Eaton must submit documents 2089–91 to Skurka within ten (10) days of the date of this Order.

## C. Eaton's Documents Labeled as Work Product
## Involving the Supplier Retention Process

Eaton produced documents corresponding to privilege log entries 370–71, 371–77, 387, 476, 637, 659, 675, 711, 793, 3398, 3443, 3531, 3659, 4268–70, 4273–80, and 4282–97 to the court for in camera review. This set of documents is a sample of documents Eaton's privilege log labels as documents involving the supplier retention process that are protected by the work-product doctrine or the attorney-client privilege. Eaton also submitted Confidential Exhibit A to the court to provide the court with additional guidance in evaluating whether the documents are protected.

The court has reviewed all documents and finds that any documents under the supplier retention process category created before December 12, 2006 must be produced to Skurka. Tab 4 of Confidential Exhibit A[1] notes that Eaton's counsel became involved with the process as of that date. It is clear to the court that the documents submitted that were created before December 12, 2006 were not created because of the party's subjective anticipation of litigation; instead, they were created for the ordinary business purpose of pursing a new business strategy to save the company money and resolve quality issues. The strategy involves many, if not all, of Eaton's suppliers and includes at least one product, the 5503 or G150 motor, which Eaton asserts is not relevant to the litigation. *See* Doc. 4280; (Def. Resp. to Skurka's Mem. Identifying Docs. Requiring In-Camera Review, at 1–3, ECF No. 159.) Eaton has even described the supplier retention process as a "plan[] to internally redesign the motors it sells . . . [and] to 'qualify' other suppliers that could produce the motors as redesigned," and as "a broad motor development and supplier retention initiative" where

---

[1] One of the documents in Tab 4 is an email from David Montanino to Daniel Carroll, with Jim Stefancin and David Montanino ("Montanino") carbon copied. It summarizes a conference call Montanino had with Eaton legal counsel David O'Laughlin, during which O'Laughlin provided legal advice.

"Eaton was evaluating its own engineering capability for designing motors and for developing its own IP." (Def. Resp. to Skurka's Mem. Identifying Docs. Requiring In-Camera Review, at 2, 3, ECF No. 159.) Eaton also indicated that the process was "not Skurka-specific." *Id.* at 3.

While the privilege log maintains that these communications were done at the direction of counsel, Eaton presents no evidence regarding the name of the counsel at whose direction the communications were allegedly prepared or other information that supports its contention regarding these documents. Also, there is no evidence that the communications were sent to counsel. Although not produced for in camera review, entry 364 also falls under this category and should be produced. Eaton has not met its burden to establish that the work-product doctrine applies to these documents. Therefore, the court orders Eaton to produce documents 364, 370, 371, 374, 375, 376,[2] 4268, and 4273–80 to Skurka. Entry 4285 is a later edition of the materials corresponding to entries 4273–80, and therefore should also be produced. These documents must be produced to Skurka within ten (10) days of the date of this Order.

Similarly, the court finds that entries 377, 387, 476, 793, 3443, 3531, 3398, 3659, 4282–84, and 4286–91 are not protected by the work-product doctrine. Although there is evidence that Eaton's counsel was involved in some aspects of the supplier retention process, Eaton presents no evidence, aside from its conclusory statements in its privilege log, that these items were created at the direction of counsel and are attorney work product. The court concludes that documents 4286–91 were created for a business purpose of securing suppliers to work with Eaton in its supplier retention process, not

---

[2] For entries 375 and 376 the Eaton's privilege log fails to include a sent date. Entry 375 was clearly sent on December 7, 2006, and the attached presentation is dated December 2006. Entry 376 does not have an email that denotes the sent date; however, the presentation is dated November 2006. Because of this, the court concludes that the presentation was created in November 2006 or earlier.

in anticipation of litigation. The court finds that the remaining documents were created to further the supplier retention process for the reasons cited above. Also if litigation was anticipated because of the supplier retention process, it appears to be a threat of litigation generally, which is inherent when a company engages in practices subsumed in the supplier retention process. S*ee Upjohn Co. v. Mova Pharm. Corp.*, 936 F.Supp. 55, 57 (D. P.R. 1996). Finding that these materials are protected would over-extend the work-product doctrine. *See id.*

Eaton has not met its burden of establishing that the materials were prepared in anticipation of litigation—that the litigation was the "driving force behind the preparation" of the documents. *Roxworthy*, 578 F.3d at 593, 595. Although not produced for in camera review, entries 472–75 and 622–35 also fall under this category and should be produced. Therefore, the court orders Eaton to produce documents 377, 387, 472–76, 622–35, 793, 3443, 3531, 3398, 3659, 4282–84, and 4286–91 to Skurka within ten (10) days of the date of this Order.

Many documents withheld as protected involve the TransDigm White Paper ("White Paper"). The court finds that White Paper was prepared in anticipation of litigation and thus is protected from discovery by the work-product doctrine. Confidential Exhibit A, Tab 8.[3] Therefore all documents regarding the White Paper are protected from discovery. This includes documents corresponding to entries 637, 659, 675, 711, 4269, and 4270.

---

[3] The relevant part of Tab 8 is email communications among Taras Szmagala, Eaton counsel and Eaton employees David Montanino and Jim Stefancin regarding the White Paper, where Mr. Montanino submitted the White Paper to Ms. Szmagala to obtain legal advice regarding the document.

## IV. CONCLUSION

The following is a summary of which documents are protected by the work-product doctrine or the attorney-client privilege, which documents Skurka must produce to Eaton, and which documents Eaton must produce to Skurka.

Skurka documents 9567, 19614, 19615, and 28552 are protected from disclosure. Eaton documents 637, 659, 675, 711, 1171–74, 4269, and 4270 are protected from disclosure. As to the documents that are protected from disclosure, Eaton must provide to Skurka a revised privilege log identifying the legal counsel involved as well as the privilege asserted, including a description that details how the documents satisfy the privilege asserted within in five (5) days of the date of this Order.

Skurka must product documents 2121 and 13609 to Eaton within ten (10) days of this Order.

Eaton must produce documents 364, 370, 371, 374–77, 387, 472–76, 622–35, 793, 3443, 3531, 3398, 3659, 4268, 4273–80, and 4282–91 to Skurka within ten (10) days of this Order.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

October 20, 2011