UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SKURKA AEROSPACE, INC., | ) | Case No.: 1:08 CV 1565 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| EATON AEROSPACE, L.L.C., | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Currently pending in the above-captioned case is Defendant Eaton Aerospace, L.L.C.'s ("Defendant" or "Eaton") Motion for Clarification of the Court's March 18, 2011 Order (ECF No. 185) ("Motion to Clarify"). For the following reasons, the court denies Eaton's Motion to Clarify.

## I. FACTS AND PROCEDURAL HISTORY

This case primarily involves two contracts, an Asset Purchase Agreement ("APA") that transferred assets, including all intellectual property, from one of Eaton's divisions to Skurka, and a Supply Agreement that required Eaton to purchase specific products from Skurka. The parties are currently involved in a dispute regarding Eaton's obligations under the court's March 18, 2011 Cross Motions for Preliminary Injunction Order ("March Order") (ECF No. 161.).

One of the provisions of the APA entered into by both parties is a covenant not to compete. The covenant states that Eaton may not compete with Skurka for ten years following the closing date of the APA, June 30, 2005. It makes a single exception: Eaton "may make minor repairs for its customers so long as the components for making such repairs are purchased pursuant to the Supply Agreement." *APA*, art. 11, at pp. 28–29.

Skurka filed suit against Eaton, alleging breach of the APA and Supply Agreement, among other claims. Subsequently, each party filed a Motion for Preliminary Injunction. The court held a

preliminary injunction hearing over four days, and on March 18, 2011, issued an order regarding its findings, granting in part and denying in part Plaintiff's request for injunctive relief and denying Defendant's request for injunctive relief.

In the March Order, the court found that "Eaton has express rights to inspect the products Skurka delivers, make minor repairs, and to approve proposed changes to products." (Mar. 18, 2011 Order, at 24, ECF No. 161.) Throughout the Order the court references "minor repairs" and "minor repairs at inspection." *Compare* (Mar. 18, 2011 Order, at 11)("Seller may make minor repairs for its customers so long as components for making such repairs . . .")(citing the *APA*, art. 11, at pp. 28–29), *id.* ("Eaton maintains that it could not 'make minor repairs [or] approve proposed changes to Products' without having these design drawings"), *id.* at 30 ("Eaton argues that it is likely to succeed on its claims because it must retain copies of the design drawings in order to comply with FAA regulations, inspect products. . . and make minor repairs."), and *id.* at 31 ("Without copies of the engineering drawings, Eaton argues that it will not be able to inspect the products it buys from Skurka, make repairs, and certify the products as airworthy.") *with id.* at 11 (A Skurka witness provided an affidavit asserting that there is a concern Eaton will use the design drawings "to conduct unauthorized repairs . . . to Skurka motor assemblies" and that "Eaton only needs top level drawing and/or specification control drawing to conform Skurka motors at [a] receiving inspection"), *id.* at 24–25 ("Defendant has the option of conducting source inspections, and/or creating SCDs and top-level drawings used to inspection products or make repairs at receiving."), and *id.* at 25 ("Defendant's argument that the APA grants Defendant the right to make minor repairs to Plaintiff's motors upon receipt of them has merits.").

The court held a status conference with the parties in the within case on September 7, 2011, to discuss the parties' progress in complying with the March Order. The parties disagreed on the

- 2 -

scope of the March Order in regard to Eaton's ability to use Skurka's intellectual property to make minor repairs. In lieu of considering the matter during the conference, the court ordered the parties to brief the issue. Specifically, the court ordered Eaton to submit a brief with respect to "(1) the nature of Eaton's business and repairs; (2) the repairs Skurka is attempting to prohibit Eaton from performing; and (3) why Eaton should not be prohibited from performing those repairs." (Motion to Clarify, at 2) (citing Tr. of Tel. Conference, at 49–50, ECF No. 183.)

In the pending Motion, Eaton asserts that "Eaton performs two types of minor repairs on Skurka motors: (1) minor repairs identified during receiving inspection . . . and (2) minor repairs identified when actuators are returned by Eaton customers after use in the field ("after-market minor repairs")," and that Skurka is attempting to prohibit Eaton from performing the repairs in category two. *Id.* at 2–3.

## II. LEGAL STANDARD

The Sixth Circuit has stated that courts in this district "have inherent power to reconsider interlocutory orders . . . before entry of a final judgment." *Mallory v. Eyrich*, 922 F.2d 1273, 1283 (6th Cir. 1991) (citing *Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47–48 (1943)). The court may also modify interlocutory orders. *Id.* (citing *Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922).)

## III. LAW AND ANALYSIS

Skurka argues that Eaton's Motion is really a motion for reconsideration, which Eaton is using to enlarge its use of Skruka's intellectual property and compete with Skruka in the aftermarket repairs business. (Pl. Opp'n to Def. Motion to Clarify, at 2, ECF No. 189.) The court finds that Defendant's Motion has been properly brought as a motion to clarify instead of a 59(e) motion for reconsideration. There has been no final judgment in this matter. The March Order is interlocutory;

therefore, the court has the discretion to reconsider or modify the March Order.

Eaton argues that the court's March Order is ambiguous as to whether Eaton may conduct only minor repairs at inspection or minor repairs at inspection and after-market minor repairs. Eaton further argues that it should not be prohibited from performing after-market minor repairs because the APA provides that Eaton may "make minor repairs for its customers" as long as the parts needed for making the repairs are purchased in accordance with the Supply Agreement. (Motion to Clarify, at 2) (quoting *APA*, art. 11). Eaton contends that the court's Order must be read in conjunction with the APA to allow Defendant to make both types of repairs. *Id.* at 2. Eaton's argument is essentially that the March Order should be read to grant Eaton the right to use Skurka's intellectual property to make any minor repair, since the court found that the APA grants Eaton the right to make minor repairs for its customers without any language limiting when the minor repair must take place. Eaton asserts that use of Skurka's intellectual property is necessary to the full range of minor repairs authorized by the APA.

Plaintiff argues that the March Orders is not ambiguous, clearly does not allow for the use of Skurka's intellectual property, specifically specification control drawings ("SCDs"), beyond making minor repairs during the receiving inspection, and forbids Eaton's use of Skurka's intellectual property for any reason other than minor repairs at inspection. (Pl. Opp'n to Def. Motion to Clarify, at 5–6, 8 ECF No. 189.) A fair reading of the March Order is consistent with Skruka's argument.

In its briefing for the Cross Motions for Preliminary Injunction, Eaton's main argument for use of Skurka's intellectual property was to ensure compliance with FAA regulations, not to engage in aftermarket repairs. In its Motion for Preliminary Injunction, Eaton argued that it needed to retain copies of design drawings to comply with FAA regulations, inspect products, approve design

changes, and make minor repairs. The court found that Eaton did not establish that it needed detailed design drawings to conduct proper inspections, but did establish that it needed some type of drawings to be readily available for this purpose. The court ordered the creation of SCDs only for purposes of complying with FAA regulations and giving Eaton the ability to make minor repairs at inspection to ensure the quality of Skurka motors. (Mar. 18, 2011 Order, at 25–26.) In denying Eaton's Motion for Preliminary Injunction and granting Skurka's Motion, the court expressly limited Eaton's use of Skurka intellectual property to the creation and use of SCDs for purposes of complying with FAA regulations and for making minor repairs during the receiving inspection.

Skurka's Motion for Preliminary Injunction requested that Eaton divest itself of all of Skurka's intellectual property. In analyzing the Motion, the court balanced the interests involved and found that a limitation of Eaton's use of Skuka's intellectual property was proper. The court recognized that the APA permits Eaton to make minor repairs for its customers generally. Although the court acknowledged that Eaton may have broader rights under the APA to make minor repairs beyond those made at inspection, there is no indication in the court's Order that the court concluded that Eaton had the right to use Skurka's intellectual property to make after-market repairs.

As preliminary relief, in order to protect Skurka's interests until final adjudication of the matter, the court limited Eaton's use of Skurka's intellectual property to repairs at inspection. Specifically, in the March Order, the court found that the APA grants Eaton the "express right[] to inspect the products Skurka delivers, make minor repairs, and to approve proposed changes to products." (Mar. 18, 2011 Order, at 24.) Subsequently, the court concluded that Eaton did not have the right to maintain detailed design drawings at its facility to comply with FAA regulations. Instead, Eaton could create "SCDs and top-level drawings. . . to make repairs at receiving," and that Eaton's "argument that the APA grants [Eaton] . . . the right to make minor repairs to Plaintiff's

- 5 -

motors upon receipt of them has merit." *Id.* at 24–25. The court, in effect, limited Eaton's rights to make after-market minor repairs under the APA, insofar as the use of Skurka's intellectual property is necessary to make those repairs. Accordingly, the court denies Eaton's Motion to Clarify its March Order to allow Eaton to use Skurka's intellectual property to make aftermarket repairs and holds that the March Order should be read consistent with this Order.

### IV. CONCLUSION

For the foregoing reasons, the court hereby denies Eaton's Motion to Clarify. This Order does not change the substance of the March Order; therefore, the March Order will not be modified or vacated.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

October 20, 2011